1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         NORTHERN DISTRICT OF CALIFORNIA

10                               SAN JOSE DIVISION

11

12   STEVEN D. MCVAY,                          Case Nos. 19-CV-04534-LHK;
                                                       16-CR-00186-LHK
13                    Petitioner,
                                               **AMENDED ORDER DENYING MOTION
14         v.                                  TO VACATE, SET ASIDE, OR CORRECT
                                               SENTENCE PURSUANT TO 28 U.S.C. §
15   UNITED STATES OF AMERICA,                 2255**

16                    Respondent.              Re: Dkt. No. 1 (19-CV-04534-LHK)
17                                             Re: Dkt. No. 73 (16-CR-00186-LHK)

18

19         Before the Court is a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C.

20   § 2255, filed by Petitioner Steven D. McVay ("Petitioner"), acting pro se.  *McVay v. United*

21   *States*, 19-CV-04534-LHK, ECF No. 1; *see also United States v. McVay*, 16-CR-00186-LHK,

22   ECF No. 73 ("Mot.").[1]  Petitioner seeks to vacate, set aside, or correct his sentence on three

23   grounds: (1) judicial bias; (2) ineffective assistance of counsel; and (3) "[i]mproper actions by the

24   District Court Judge".  Mot. at 4, 16.  Having considered the parties' submissions, the relevant

25

     ─────────────────────────
26   [1] All ECF citations refer to 16-CR-00186-LHK unless otherwise noted. Because Petitioner has
     hand labeled exhibits in the motion, the Court will use ECF citations and pagination when citing
27   the motion and associated exhibits.

28

1    law, and the record in this case, the Court DENIES Petitioner's motion to vacate, set aside, or

2    correct Petitioner's sentence.[2]

3    **I.       BACKGROUND**

4         **A.   Factual Background**

5              **1.   The Offense Conduct and Petitioner's Involvement in ARTLoan Financial, LLC.**

6              In February 2010, Petitioner filed a voluntary petition for bankruptcy in the United States

7    Bankruptcy Court for the Northern District of California seeking relief for approximately $1.5

8    million in debts he had accumulated.  Plea Agreement, ECF No. 20 ("Plea Agreement) at 2.

9    Petitioner also filed documents identified as Schedule A (Real Property), Schedule B (Personal

10   Property), and a Statement of Financial Affairs in connection with his petition for bankruptcy.  *Id.*

11   Petitioner signed his petition for bankruptcy, Schedules A and B, and Statement of Financial

12   Affairs under penalty of perjury.  *Id.*

13             In September 2013, Petitioner's bankruptcy filings were referred to the Federal Bureau of

14   Investigations ("FBI") for possible fraud. Presentence Investigation Report, ECF No. 22 ("PSR"),

15   ¶ 7.[3] The FBI's investigation revealed that Petitioner had concealed assets and made false

16   statements in his bankruptcy filings. Petitioner failed to disclose ongoing interest in real property

17   in his Schedule A filing, later claiming falsely at his deposition that he had disclosed the property

18   to his attorney.  PSR ¶ 12.  The undisclosed residence, located at 5235 Harwood Road in San Jose,

19   California, had a total value of $325,447.16.  *Id.*  Petitioner also failed to disclose six opened bank

20   accounts, which contained a total of $45,586.77.  *Id.* ¶ 13. Between the undisclosed property and

21   six bank accounts, Petitioner concealed $371,033.93 in assets from his creditors.  *Id.* ¶ 14.

22   Further, Petitioner's Statement of Financial Affairs failed to disclose other property, money

23   transfers, and numerous financial accounts that had been closed within a year of Petitioner's filing

24

25   _____

     [2] This order vacates and supersedes *McVay v. United States*, 19-cv-04534, ECF No. 5, and *United States v. McVay*, 16-CR-00186-LHK, ECF No. 98.

26   [3] "[T]he district court may rely on undisputed statements in the PSR at sentencing." *United States v. Ameline*, 409 F.3d 1073, 1085 (9th Cir.2005) (en banc). Although Petitioner disputed the

27   offense level computation in the PSR, Petitioner disputed no facts in the PSR. *See* ECF No. 23.

28   Case Nos. 19-CV-04534-LHK; 16-CR-00186-LHK-1
     ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C.
     § 2255

United States District Court
Northern District of California

1   for bankruptcy.  *Id.* ¶¶ 15-17.  Specifically, Petitioner failed to disclose (1) a previously owned

2   residence, located at 11650 San Mateo Road in Half Moon Bay, California, which was sold for

3   $1,500,000 within a year of Petitioner's bankruptcy filing; (2) money transfers totaling $1,579,485

4   within two years of the bankruptcy filing; and (3) numerous financial accounts closed within a

5   year of the bankruptcy filing.  *Id.* ¶ 15-17.

6           Among the money transfers that Petitioner failed to disclose were transfers into a bank

7   account that Petitioner opened in Petitioner's wife's name, without her knowledge or

8   authorization, in the year leading up to Petitioner's bankruptcy filing.  *Id.* ¶ 11.  Petitioner then

9   liquidated $297,891 from equity in two residential properties, $10,154 from equity in Petitioner's

10  wife's life insurance policy, $7,354 from equity in Petitioner's own life insurance policy, and

11  $4,402 from an investment account.  ECF No. 24 at 2.   In the months and days leading up to

12  Petitioner's bankruptcy filing, Petitioner transferred tens of thousands of dollars into the account

13  in his wife's name.  *Id.*  These transfers were not disclosed in Petitioner's bankruptcy filings.  *Id.*

14  Petitioner then transferred money out of the account through checks made payable to Petitioner.

15  *Id.*  Petitioner committed these offenses when he was in his mid-60s.  PSR at 2, 4-8.

16          Petitioner's wife, who filed for bankruptcy approximately one year after Petitioner filed for

17  bankruptcy, also failed to disclose assets and transfers in her bankruptcy filings.  *Id.* ¶ 10.  The

18  United States Trustee's Office agreed to dismiss the complaint against Petitioner's wife if

19  Petitioner agreed to a stipulated judgment for his bankruptcy case.  *Id.*  Judgment was entered on

20  November 22, 2014 denying Petitioner's discharge of over $1,500,000.  *Id.*

21          On September 25, 2013, a twelve-count indictment was filed charging Anthony Barreiro

22  ("Barreiro") and Ernest Ray Parker ("Parker") with conspiracy to commit wire and mail fraud,

23  mail fraud, and wire fraud for their conduct as the principals of ARTLoan Financial, LLC

24  ("ARTLoan").  *Id.*  ARTLoan was a business entity that promised to use investors' money as

25  lending capital for collectors seeking to finance the purchase of valuable artwork.  *See United*

26  *States v. Barreiro*, 5:13-cr-00636-LHK, ECF No. 1 at 2 (hereafter, "ARTLoan case").  Barreiro,

27

28  Case Nos. 19-CV-04534-LHK; 16-CR-00186-LHK-1
    ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C.
    § 2255

3

1    ARTLoan's Chairman and CEO, and Parker, ARTLoan's President, falsely represented to

2    investors that ARTLoan was "successfully engaging in debt financing agreements with third-party

3    borrowers, generating regular monthly interest payments and increasing the overall value of each

4    investor's loan agreement with ARTLoan." *Id.* at 5.  By around June 2010, "ARTLoan had made

5    approximately $1.8 million in 'Ponzi' payments," of which Barreiro and Parker diverted

6    approximately $1.5 million to themselves. *Id.* at 6.

7            On August 31, 2016, the Court held a status conference with the government and the

8    defendants. *See* ARTLoan case, ECF No. 152.  At the status conference, the Court discussed the

9    terms of a proposed plea agreement between the government and each defendant. *See* ARTLoan

10   case, ECF No. 156 at 57-60.  The plea agreement recommended "a period of post-plea diversion

11   not to exceed 18 months" and restitution of "no less than $500 each per month." ARTLoan case,

12   ECF Nos. 133, 134 ¶ 9.  At least four victims testified at the status conference and were uniformly

13   unsatisfied with the terms of the plea agreement and preferred the risk of defendants going to trial.

14   ARTLoan case, ECF No. 156 at 25-47.  The Court rejected the plea deal and scheduled trial to

15   start on February 21, 2017. *Id.* at 47-50.  The Court also adopted the parties' briefing schedule for

16   defendants' motion to suppress, setting an October 26, 2016 deadline to file the motion to suppress

17   and a December 14, 2021 motion hearing date. *See* ARTLoan case, ECF No. 156 at 57-60.  On

18   October 12, 2016, at the parties' request, the Court extended the deadline to file the motion to

19   November 16, 2016 and the hearing to January 18, 2017.  ARTLoan case, ECF No. 163.  On

20   November 16, 2016, the government filed a notice of dismissal as to Barreiro and Parker.

21   ARTLoan case, ECF Nos. 164, 165.

22           Petitioner was a paid Director and Executive of ARTLoan as well as an investor in

23   ARTLoan.  May 17, 2017 Sentencing Transcript ("Sentencing Tr.") at 12-16.  Petitioner solicited

24   most of the investors in ARTLoan personally. *Id.* at 14.  Petitioner was not criminally charged for

25   his involvement in the ARTLoan scheme. ECF No. 24 at 1.  According to the Presentence

26   Investigation Reports prepared for Anthony Barreiro and Ernest Ray Parker, Petitioner owned a

27

28   Case Nos. 19-CV-04534-LHK; 16-CR-00186-LHK-1
     ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C.
     § 2255

United States District Court
Northern District of California

4

1    4% interest in ARTLoan when it became a California limited liability company in September

2    2004, and, under the company's operational agreement, would receive an additional 4% interest in

3    the company if he raised $4 million in funding by November 1, 2006.  *See* ARTLoan case, 5:13-

4    cr-00636-LHK, ECF No. 142 ¶ 12.  Petitioner gave investor pitches on behalf of ARTLoan and

5    had investors sign Loan and Security Agreements.  *Id.* ¶¶ 14, 16.

6            Petitioner's bankruptcy petition in the instant case "included debt to creditors stemming

7    from the ARTLoan scheme to defraud."  ECF No. 93 at 8.  Petitioner's PSR notes that several of

8    Petitioner's debts were related to loans from ARTLoan.  PSR ¶ 9.  In a declaration submitted with

9    the government's opposition to Petitioner's § 2255 motion, Michael Hinckley ("Hinckley"),

10   Petitioner's prior counsel through sentencing recalls that "nearly all the victims in this case were

11   seeking funds from [Petitioner] in his bankruptcy proceedings in an effort to recoup losses they

12   incurred as a result of the fraud in the related case, for which they contended [Petitioner] bore a

13   degree of responsibility.  This situation was necessarily reflected throughout [Petitioner]'s case,

14   including in the discovery, the Presentence Investigation Report (PSR), the pleadings, and in the

15   victims' statements."  Declaration of Michael Hinckley, ECF No. 93-1 ("Hinckley Decl.") ¶ 8.

16           **2.   The Indictment and Petitioner's Binding Plea Agreement.**

17           On April 28, 2016, Petitioner was charged with two counts of concealment of assets in

18   bankruptcy proceeding in violation of 18 U.S.C. § 152(1), and one count of false testimony in

19   bankruptcy proceedings in violation of 18 U.S.C. § 152(2).  ECF No. 1.  On May 5, 2016,

20   Petitioner was arrested and appeared before United States Magistrate Judge Nathanael Cousins for

21   arraignment on the three count indictment.  ECF No. 3.  The same day, Petitioner was released on

22   a $100,000 bond.  ECF No. 5.  Petitioner first appeared before the undersigned on May 23, 2016.

23   ECF No. 9.

24           On January 25, 2017, with the assistance of counsel, Petitioner executed a plea agreement

25   ("Plea Agreement") pursuant to Federal Rules of Criminal Procedure 11(c)(1)(A) and 11(c)(1)(B).

26   Plea Agreement, ECF No. 20, at 1.  The Plea Agreement provided that Petitioner agreed to plead

27

28   Case Nos. 19-CV-04534-LHK; 16-CR-00186-LHK-1
     ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C.
     § 2255

United States District Court
Northern District of California

1  guilty to one count of concealment of assets in bankruptcy proceedings, in violation of 18 U.S.C. §

2  152(1). *Id.*

3       Furthermore, the Plea Agreement provided, in relevant part that: "I agree not to file any

4  collateral attack on my conviction or sentence, including a petition under 28 U.S.C. § 2255 or 28

5  U.S.C. § 2241, except that I reserve my right to claim that my counsel was ineffective." *Id.* at 3.

6  The Plea Agreement also provided that Petitioner agreed "to give up my right to appeal my

7  conviction, the judgment, and orders of the Court, as well as any aspect of my sentence, including

8  any orders relating to forfeiture and/or restitution, except that I reserve my right to claim that my

9  counsel was ineffective." *Id.*  The Plea Agreement also provided that Petitioner agreed that the

10  maximum prison term penalty for a violation of 18 U.S.C. § 152(1) was 5 years, "that the Court is

11  not bound by the Guidelines calculations" in the Plea Agreement, and instead "the Court may

12  conclude that a higher Guidelines range applies to me, and if it does, I will not be entitled, nor will

13  I ask to withdraw my guilty plea." *Id.* at 2, 4-5.

14       Regarding the recommended sentencing guidelines range, the Plea Agreement provided

15  that the parties agreed some, but not all relevant offense level calculations.  The parties agreed

16  that: (1) the Base Offense level was 6 points; (2) there should be a two point increase for

17  Bankruptcy fraud; and (3) there should be a two or three point decrease for acceptance of

18  responsibility depending on the final offense level calculation.  *Id.* at 4.  The parties had not

19  reached agreement on the total amount of loss/gain under U.S.S.G. § 2B1.1(b)(1) and the total

20  number of victims under § 2B1.1(b)(2).  *Id.*  These two factors would be determined at sentencing.

21  *Id.*  Accordingly, the Plea Agreement listed the "Adjusted Offense Level" as "TBD."  *Id.*

22       Lastly, the Plea Agreement noted no agreement was reached regarding Petitioner's

23  criminal history category.  *Id.*

24       **3.  Petitioner's Guilty Plea.**

25       On January 25, 2017, pursuant to the Plea Agreement, Petitioner, under penalty of perjury,

26  entered a plea of guilty.  Specifically, Petitioner pled guilty to Count 1 of the indictment of

27

28  Case Nos. 19-CV-04534-LHK; 16-CR-00186-LHK-1
ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C.
§ 2255

concealment of assets in bankruptcy proceedings, in violation of 18 U.S.C. § 152(1).  Plea

Transcript, ECF No. 72 ("Plea Tr.") at 14.  During the guilty plea hearing, the Court engaged in

the following colloquy regarding Petitioner's plea agreement:

> The Court: Did you read your plea agreement?
>
> Petitioner: Yes, I did.
>
> The Court: Do you understand your plea agreement?
>
> Petitioner: I do.
>
> The Court: Have you had enough time to discuss the plea agreement with your attorney?
>
> Petitioner: Yes, your Honor.
>
> The Court: Has your attorney been able to answer your questions about your plea
>
> agreement?
>
> Petitioner: Yes, your Honor.
>
> The Court: Are you satisfied with the services your attorney has provided to you?
>
> Petitioner: Yes, your Honor.

*Id.* at 6.  The Court, Petitioner, and Assistant United States Attorney Timothy Lucey, subsequently

engaged in the following colloquy regarding the penalties Petitioner was facing by pleading guilty.

> The Court: Would you please state, Mr. Lucey, the maximum penalties provided by law.
>
> Mr. Lucey: Yes, your honor.  The maximum penalty for violation of 18 USC Section 152,
>
> subsection 1, concealment of assets in bankruptcy proceedings is a five-year prison term . .
>
> .
>
> The Court: . . . Do you understand all of maximum penalties provided by law?
>
> Petitioner: Yes, your honor.

*Id.* at 8.  The Court and Petitioner then engaged in the following colloquy regarding Petitioner's

right to appeal and right to file a petition or motion under 28 U.S.C. § 2255, 28 U.S.C. § 2241, and

18 U.S.C. § 3582:

> The Court: Do you understand that in paragraph 4 of your plea agreement, you are giving

7

United States District Court
Northern District of California

1    up your right to appeal?

2    Petitioner: Yes, your honor.

3    The Court: You are, however, keeping the right to claim that your counsel was not

4    effective.

5         Do you understand that you have the right to file other types of motions or petitions

6    attacking orders made by the Court, attacking your conviction and your sentence?

7    Petitioner: Yes, your Honor.

8    The Court: Do you understand that in paragraph 5 of your plea agreement, you agree not to

9    file any collateral attack on your conviction or your sentence, except you keep the right to

10   claim that your counsel was not effective, but you also agree not to seek relief under 18

11   USC Section 3582.

12   Petitioner: Yes, your Honor.

13   *Id.* at 10-11.  After an extensive colloquy, the Court found that Petitioner "made a knowing,

14   intelligent, free, and voluntary waiver of his rights and entry of a guilty plea."  *Id.* at 14.

15        **4.  Petitioner's Sentence and Restitution.**

16        Prior to the sentencing hearing, the PSR calculated Petitioner's total offense level at 23 and

17   a criminal history category of I, resulting in a recommended sentencing guidelines range of 46 to

18   57 months.  PSR ¶ 77.  In reaching this total offense level, the PSR recommended a 16 level

19   increase under § 2B1.1(b)(1) for loss based on an actual loss finding of $1.5 million and a 2 level

20   increase under § 2B1.1(b)(2)(A) based on the 20 creditors in the case being categorized as victims

21   entitled to full restitution on their claims against Petitioner.  *Id.* ¶ 31, 32.  The PSR also calculated

22   restitution in the amount of $1,828,058.  *Id.* ¶ 86.

23        The government agreed with the sentencing guidelines range calculated in the PSR and

24   recommended a sentence of 52 months, in the middle of the recommended 46 to 57 months range.

25   ECF No. 24 at 5-6.  Petitioner objected to the 16 level increase under § 2B1.1(b)(1) and the 2 level

26   increase under § 2B1.1(b)(2)(A).  ECF No. 23 at 2-4.  Petitioner thus sought a total offense level

27

28

United States District Court
Northern District of California

of 12, resulting in a sentencing guidelines range of 10-16 months, and requested the low-end of the guidelines range of 10 months. *Id.* at 13.

On May 17, 2017, the Court held Petitioner's sentencing hearing. ECF No. 26. Petitioner was 68 years old and in good health. PSR ¶¶ 61, 62. At least eleven victims of Petitioner's fraud schemes attended the sentencing hearing. May 7, 2017 Sentencing Transcript ("Sentencing Tr.") at 86. Five victims spoke at the hearing, including members and the chair of the Creditors Committee for Petitioner's bankruptcy. *E.g. id.* at 70-71. These victims alleged that Petitioner defrauded them in fraudulent schemes, including investments in, or rentals of, residential properties as well as investments in ARTLoan, and targeted elderly members of the Los Gatos Lions Club. *E.g.*, Sentencing Tr. at 121. The victims requested that Petitioner "be prosecuted to the full extent of the law." *Id.* at 45. However, at least two victims made additional fraud allegations not yet in the record. The Court gave Petitioner the option to postpone sentencing to give Petitioner time to investigate and contest the new allegations. Sentencing Tr. at 95-96. Petitioner decided to proceed with sentencing and asked the Court not to consider the new allegations. *Id.* The Court granted Petitioner's request and did not consider the new allegations in Petitioner's sentencing. Instead, the Court sentenced Petitioner based only on the filed documents in the record, including victim impact statements previously addressed by the parties' sentencing memoranda. *Id.*

At the sentencing hearing, before determining Petitioner's total offense level and the recommended sentencing guidelines, the Court ruled on the two disputed offense level characteristics—the total loss amount and the number of victims.

First, after listening to arguments from both sides, the Court agreed with the government that a 16 level increase under § 2B1.1(b)(1) applied. *Id.* at 17-23, 101. Under § 2B1.1(b)(1) if the loss amount is more than $1,500,000, but less than $3,000,000 a 16 level increase is warranted. The parties disputed whether the Court should consider only actual loss, the $45,586.77 amount Petitioner admitted to concealing in bankruptcy, or the intended loss, the over $1.5 million amount

9

United States District Court
Northern District of California

Petitioner sought to discharge in bankruptcy applied. *See, e.g.*, Sentencing Tr. at 17-23.

The Court explained that under Ninth Circuit law the Court would consider the intended loss of over $1.5 million Petitioner sought to discharge, rather than the value of the assets Petitioner admitted to concealing. *Id.* at 17-23, 101. Accordingly, the Court determined that the 16 level increase applied. *Id.* at 101.

Second, the Court, agreed with Petitioner that a 2 level increase under § 2B1.1(b)(2)(A) did not apply because the sentencing guidelines required the victims of the offense to have suffered actual loss. *Id.* at 101-02. Under § 2B1.1(b)(2)(A) a two-level increase applies if there are 10 or more victims. The government argued the 20 creditors listed on Petitioner's bankruptcy petition were all victims. *See* ECF No. 24. However, because Petitioner's bankruptcy petition was denied discharge, the Court concluded the creditors had not suffered actual loss as defined by the sentencing guidelines. *See* Sentencing Tr. 23-43, 102. The Court thus determined that the two level did not apply. *Id.* at 102.

Accordingly, the Court calculated Petitioner's adjusted offense level as follows: (1) base offense level of 6; (2) 16 level increase under § 2B1.1(b)(1) because the loss amount was more than $1,500,000; (3) 2 level increase because the crime was bankruptcy fraud under §2B1.1(b)(2)(A)(I); and a (4) 3 level decrease for acceptance of responsibility. *Id.* at 102. The Court thus concluded that Petitioner's total offense level was 21, and with a criminal history category I the resulting recommended guidelines sentence range was 37 to 46 months.[4] *Id.* at 102.

The Court then turned to the relevant § 3553(a) factors. The Court addressed the relevant sentencing factors and explained that it would vary Petitioner's sentence upward to 56 months in custody because the sentencing guidelines underrepresented the actual harm based on Petitioner's actions. *Id.* at 102-112. Specifically, the Court explained that Petitioner was benefiting from his own scheme to conceal assets prior to and during his bankruptcy proceedings by way of false

---

[4] At the May 17, 2017 sentencing hearing, Petitioner had a change of plea hearing scheduled for May 26, 2017 in his state court criminal fraud case. PSR ¶ 48.

Case Nos. 19-CV-04534-LHK; 16-CR-00186-LHK-1
ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

deposition testimony and false filings in the Bankruptcy Court. *Id.* Petitioner's bankruptcy petition was denied discharge because of his fraud. In turn, the creditors did not suffer actual loss, and thus the 2 point offense level increase under § 2B1.1(b)(2)(A), for crimes involving 10 or more victims, did not apply. *Id.* As such, Petitioner's fraud, and basis for the criminal conviction, precluded the application of this increase under the sentencing guidelines. *Id.* The Court thus concluded that the sentencing guidelines underrepresented the actual harm of Petitioner's actions and varied Petitioner's sentence upward from the recommended range by about 10 months to account for this discrepancy. *Id.* The Court also imposed a three year supervised release condition on Petitioner. *Id.* at 112.

The Court then held restitution hearings on June 21, 2017 and August 30, 2017. ECF Nos. 41, 50. Petitioner's PSR identified 21 victims, including 13 individual persons, and a total loss amount of $1,828,058. PSR ¶ 26.

At these restitution hearings, the government and Petitioner again disputed whether the Court should order restitution on the amount of intended loss of over $1.5 million, or the actual loss of about $45,000. *See, e.g.*, Restitution Tr. 1-28. The Court explained that under applicable Ninth Circuit law restitution was limited to "what the creditors would have received had the bankruptcy debtor acted lawfully in disclosing his assets and liabilities." Restitution Tr. at 28. The Court then concluded that it could determine that the creditors would have been able to receive the $45,586.77 Petitioner concealed, had Petitioner acted lawfully. *Id.* However, the Court found it could not reach the same conclusion for the over $1.5 million Petitioner transferred between accounts in the two years prior to filing his bankruptcy petition. *Id.* at 28-23. Accordingly, the Court awarded $37,540.50 in restitution to victims resulting from actual loss under 18 U.S.C. § 3663A(b)(1), *see* ECF No. 52, in line with Petitioner's position, *see* ECF No. 46. However, because the law also required the Court to award restitution to victims for their expenses, including legal fees, the Court also found it would award $174,468 in legal fees and expenses incurred pursuant to 18 U.S.C. § 3663A(b)(4). Restitution Tr. at 32-46; *see also* ECF

Case Nos. 19-CV-04534-LHK; 16-CR-00186-LHK-1
ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

United States District Court
Northern District of California

No. 52.  On September 6, 2017, pursuant to the government's and Petitioner's stipulation, the Court ordered Petitioner to pay $212,008.50 in restitution to the victims of Petitioner's offense of concealing bankruptcy assets.  ECF No. 52.

### B. Procedural Background

On August 2, 2019, Petitioner—proceeding *pro se*—filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  ECF No. 73.  On October 28, 2019, Petitioner filed a document titled "Supplemental Information on § 2255 Petition."  ECF No. 74.

On December 23, 2019, Petitioner filed a motion for discovery seeking audio recordings of "the sentence hearings held previously in the sentence phase of" the Petitioner's criminal case.  ECF No. 96.  On March 5, 2020, Petitioner filed a motion for appointment of counsel.  ECF No. 97.

On April 15, 2020, the Court ordered the government to file an opposition showing cause why the Court should not grant Petitioner's motion to vacate, set aside, or correct his sentence.  ECF No. 79.

Five days later, on April 20, 2020, Petitioner filed a motion under 18 U.S.C. §3582(c)(1)(A), also known as a motion for compassionate release, requesting release to home confinement or supervised release in light of the COVID-19 pandemic.  ECF No. 81.  New counsel was appointed to represent Petitioner on May 5, 2020.  ECF No. 84.

On June 8, 2020, counsel for Petitioner informed the Court that the Bureau of Prisons had released Petitioner to serve the remainder of his sentence on home confinement.  ECF No. 86.  Specifically, Petitioner was released to home confinement on May 22, 2020.  ECF No. 88.  Petitioner's motion for compassionate release was thus withdrawn without prejudice.  ECF No. 87.

On June 11, 2020, the government moved for a 30-day extension of time to respond to Petitioner's § 2255 motion.  ECF No. 88.  The Court granted the government's request, setting a July 14, 2020 deadline for the government to file its opposition and an August 28, 2020 deadline

12

United States District Court
Northern District of California

1    for Petitioner to file his reply.  ECF No. 90.

2         On June 12, 2020, on the motion of the government, the Court issued an order finding

3    waiver of attorney-client privilege between Petitioner and his counsel through sentencing, Michael

4    Hinkley, and ordering the production of relevant communications by former defense counsel

5    within 14 days.  ECF No. 91.

6         On July 14, 2020, the government filed an opposition to Petitioner's § 2255 motion.  ECF

7    No. 93 ("Opp'n").  On August 31, 2020, Petitioner filed a request for (1) a 30-day extension of

8    time to file a reply in support of Petitioner's § 2255 motion, and (2) a ruling on Petitioner's motion

9    for appointment of counsel and motion for discovery for audio recordings of Petitioner's

10   sentencing hearings.  ECF No. 95.  Petitioner failed to file a reply in support of Petitioner's § 2255

11   motion.

12        On August 20, 2021, Petitioner, who had been on home confinement since May 5, 2020,

13   began his three year supervised release term.  ECF No. 95; *See* Federal Bureau of Prisons, Find an

14   Inmate, https://www.bop.gov/inmateloc/ (last visited January 14, 2022).

15   **II.    LEGAL STANDARD**

16        **A.  28 U.S.C. § 2255 Motion**

17        A motion to set aside, correct or vacate a sentence of a person in federal custody pursuant

18   to 28 U.S.C. § 2255 entitles a prisoner to relief "[i]f the court finds that ... there has been such a

19   denial or infringement of the constitutional rights of the prisoner as to render the judgment

20   vulnerable to collateral attack."  28 U.S.C § 2255.  Under § 2255, "a district court must grant a

21   hearing to determine the validity of a petition brought under that section, '[u]nless the motions and

22   the files and records of the case conclusively show that the prisoner is entitled to no relief.'"

23   *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir.1994) (quoting 28 U.S.C. § 2255).

24        **B.  Evidentiary Hearing Requirement Under 28 U.S.C. § 2255**

25        A court need not hold an evidentiary hearing where the prisoner's allegations, when

26   viewed against the record, either do not state a claim for relief or are so palpably incredible as to

27

28   Case Nos. 19-CV-04534-LHK; 16-CR-00186-LHK-1
     ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C.
     § 2255

United States District Court
Northern District of California

1    warrant summary dismissal. *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir.1996); *Shah*

2    *v. United States*, 878 F.2d 1156, 1158 (9th Cir.1989), *cert. denied*, 493 U.S. 869 (1989); *United*

3    *States v. Schaflander*, 743 F.2d 714, 717 (9th Cir.1984), *cert. denied*, 470 U.S. 1058 (1985).

4    "Merely conclusory statements in a § 2255 motion are not enough to require a hearing." *United*

5    *States v. Johnson*, 988 F.2d 941, 945 (9th Cir.1993); *see also United States v. Howard*, 381 F.3d

6    873, 879 (9th Cir.2004).  While a petitioner is not required to allege facts in detail, he must make

7    factual allegations.  *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir.1980).  Accordingly, an

8    evidentiary hearing is required only if: (1) a petitioner alleges specific facts, which, if true would

9    entitle him to relief; and (2) the petition, files, and record of the case cannot conclusively show

10   that the petitioner is entitled to no relief.  *Howard*, 381 F.3d at 877.

## III.    DISCUSSION

12           Petitioner requests that the Court set aside, correct, or vacate his sentence on the basis of

13   judicial bias, ineffective assistance of counsel and "[i]mproper actions by the District Court

14   Judge."  Mot. at 4, 16.  Specifically, Petitioner argues that: (1) the Court "was involved in prior

15   extensive litigation in which Movant's name and actions were questioned. Judge should have

16   recused"; (2) "Counsel radically underestimated length of potential sentence on plea and failed to

17   request that Judge Koh be recused due to prior conflicts. Counsel also failed to file Notice of

18   Appeal"; and (3) the Court improperly calculated restitution, "should have recused" from the case,

19   "used evidence from previously discharged case to issue sentence and violated sentencing

20   guidelines," and "disregarded defendant's medical condition and denied him critical care related to

21   a hernia condition."  Mot at 3-4, 16.

22           The Government argues in opposition that Petitioner (1) has waived his right to bring a

23   motion pursuant to § 2255 unless there is a claim of ineffective assistance of counsel; (2) the Court

24   was not prejudiced; and (3) prior defense counsel did not provide ineffective assistance.  Opp'n at

25   4-15.  Specifically, the Government argues that there was no need for the Court to recuse itself

26   because the Ninth Circuit has previously rejected similar challenges of judicial bias, the Court was

27

28
Case Nos. 19-CV-04534-LHK; 16-CR-00186-LHK-1
ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C.
§ 2255

permitted to consider the ARTLoan case when deciding whether to vary Defendant's sentence from the Sentencing Guidelines, the Court did not conduct itself improperly, and Petitioner's prior counsel did not provide ineffective assistance. *Id.*

The Court first determines whether Petitioner waived his right to bring a motion pursuant a motion pursuant to 28 U.S.C. § 2255 with the exception of the ineffective assistance of counsel claim. The Court then considers the merits of Petitioner's claims. Finally, the Court considers whether to grant Petitioner's request for an evidentiary hearing and to appoint counsel.

### A. Petitioner Waived the Right to Collaterally Attack His Sentence But Not the Restitution Amount.

A defendant may expressly waive the statutory right to bring a Section 2255 motion challenging the conviction or sentence. *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir.1994). Two claims that cannot be waived, however, are that the waiver itself was involuntary or that ineffective assistance of counsel rendered the waiver involuntary. *See Washington v. Lampert*, 422 F.3d 864, 870-71 (9th Cir. 2005).

In the "Supplemental Information on § 2255 Petition" document Petitioner challenges the voluntariness of his waiver of the right to collaterally attack his sentence. ECF No. 74 at 2-3. Petitioner argues that the guilty plea was not knowing and voluntary because "the sentence of imprisonment and restitution far exceeded the terms of the plea agreement." *Id.* The Court considers imprisonment first, and then restitution.

Petitioner repeatedly acknowledged that he was entering into the binding Plea Agreement knowingly and voluntarily and acknowledged that the Court could impose a higher sentence than the sentencing guidelines recommended. *See* Plea Agreement ¶ 7 ("the Court may conclude that a higher Guidelines range applies to me, and if it does, I will not be entitled, nor will I ask to withdraw my guilty plea."). Petitioner also "agree[d] that regardless of the sentence that the Court imposes on me, I will not be entitled, nor will I ask, to withdraw my guilty plea." Petitioner further affirmed that he: (1) "had adequate time to discuss this case, the evidence, and [the Plea Agreement] with [his] attorney;" (2) "was not under the influence of any alcohol, drug, or

15

Case Nos. 19-CV-04534-LHK; 16-CR-00186-LHK-1
ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C.
§ 2255

medicine" when considering and signing the Plea Agreement; (3) was entering the Plea

Agreement "knowing the charges that have been brought against me, any possible defenses, and

the benefits and possible detriments of proceeding to trial."  Plea Agreement ¶ 7.  Petitioner also

confirmed "that [his] decision to plead guilty [was] made voluntarily," without threats or coercion.

*Id.*

Similarly, during the plea colloquy, the Court brought to Petitioner's attention that he

could be facing a higher sentence by pleading guilty.  *See* Plea Tr. at 8 (Court directing AUSA

Lucey to state that the "maximum penalty for violation of 18 USC Section 152, subsection 1,

concealment of assets in bankruptcy proceedings [was] a five-year prison term").  Petitioner also

reiterated that his plea was made knowingly and voluntarily.  Plea Tr. at 7 ("THE COURT: Is your

decision to plead guilty free and voluntary? PETITIONER: Yes, your Honor.").  The Court then

reminded Petitioner that by accepting the Plea Agreement, Petitioner was waiving the right to

collaterally attack his sentence, and Petitioner confirmed that he understood that he was waiving

this right.  Plea Tr. at 10-11.  Petitioner also affirmed that he understood the Plea Agreement and

that he was entering the Plea Agreement voluntarily.  *Id.* at 7.

On these facts, the Court concludes that Petitioner's plea agreement waiver as to the prison

sentence was knowing and voluntary.  *See United States v. Lo*, 839 F.3d 777, 786-87 (9th Cir.

2016) (factors supporting finding the plea agreement knowing and voluntary include district court

reviewing the plea agreement with defendant and bringing to defendant's attention that the

sentence could be greater and the waivers of appeal and collateral attack in the plea agreement);

*see also United States v. Jimenez*, No. 98-30160, 1999 WL 402449, at *1 (9th Cir. June 11, 1999)

(waiver of right to appeal was valid despite the district court imposing a sentence higher than what

was negotiated in the plea agreement).

Turning to the restitution, the Court concludes that Petitioner's plea agreement was not

knowing and voluntary because the amount in the plea agreement "did not set forth any specific

amount of restitution that [Petitioner] could be required to pay, or even any estimate of that

16

1   amount." *United States v. Tsosie*, 639 F.3d 1213, 1218 (9th Cir. 2011).  Here, the maximum

2   restitution amount in the Plea Agreement stated "TBD" and thus provided no estimate to

3   Petitioner.  *See* ECF No. 20.  Therefore, Petitioner has not waived his right to challenge the

4   restitution amount.  *Tsosie*, 639 F.3d at 1218.

5         Accordingly, the Court finds that Petitioner waived his right to bring all his claims as part

6   of his binding Plea Agreement but two.  Petitioner may bring a claim challenging the restitution

7   amount and ineffective assistance of counsel.

8         Nevertheless, the Court now addresses all of Petitioner's claims on the merits.

9       **B.  Petitioner's Claims Lack Merit.**

10         Even if Petitioner had not waived most of his claims, the Court concludes, for the reasons

11   below, that Petitioner's claims lack merit.  The Court first addresses judicial bias and misconduct,

12   then ineffective assistance, and lastly that the Court improperly varied Petitioner's sentence.

13       **1.  The Court was not prejudiced to Petitioner.**

14         Petitioner makes two allegations of prejudice—judicial bias, and misconduct.  Mot at 4

15   The Court addresses each argument in turn.

16         **a.  The record shows no judicial bias.**

17         Petitioner first alleges "Judicial Misconduct and bias. Judge was involved in prior

18   extensive litigation in which Movant's name and actions were questioned. Judge should have

19   recused." Mot. at 4.  "A showing of judicial bias requires facts sufficient to create actual

20   impropriety or an appearance of impropriety." *Crater v. Galaza*, 491 F.3d 1119, 1131 (9th

21   Cir.2007).  Thus, a judge must recuse when "a reasonable person with knowledge of all the facts

22   would conclude that the judge's impartiality might reasonably be questioned." *United States v.*

23   *Holland*, 519 F.3d 909, 913 (9th Cir. 2008) (citing 28 U.S.C. § 455(a)).  However, factors

24   "ordinarily insufficient to require recusal" include the "mere fact that a judge has previously

25   expressed . . . a determination to impose severe punishment within the limits of the law upon those

26   found guilty of a particular offense", "prior rulings in the proceeding, or another proceeding,

27

28   Case Nos. 19-CV-04534-LHK; 16-CR-00186-LHK-1
ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C.
§ 2255

United States District Court
Northern District of California

1   solely because they were adverse" or "mere familiarity with the defendant(s)."  *United States v.*

2   *Johnson*, 610 F.3d 1138, 1147 (9th Cir. 2010).

3          Here, the fact that the Court presided over a related case, *United States v. Barreiro*, 5:13-

4   cr-00636-LHK, the ARTLoan criminal case, is not a sufficient reason to warrant recusal.  As the

5   government correctly points out, the Ninth Circuit squarely rejected this argument in *Johnson*.

6   Opp'n at 6.  There, defendants argued "that Judge Alsup should have been recused because he

7   presided over their prior civil case and they say he received extrajudicial information that biased

8   him against them."  *Johnson*, 610 F.3d at 1147.  The Ninth Circuit explained that under Supreme

9   Court precedent "judicial rulings or information acquired by the court in its judicial capacity will

10  rarely support recusal."  *Id.* (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)).  Thus,

11  Judge Alsup's rulings and sanctions in the prior case against the *Johnson* defendants, and their

12  attorney, did not warrant recusal because "[a]dverse findings do not equate to bias."  *Id.* at 1148.

13         So too here.  The Court's mere familiarity with the facts of the ARTLoan criminal case, or

14  Petitioner, "do not equate to bias."  *Id.*  In fact, unlike in *Johnson*, the Court made no adverse

15  rulings against Petitioner in *Barreiro* and dismissed the indictment against the two defendants in

16  *Barreiro*.  All Petitioner has alleged is the Court's familiarity with Petitioner due to the allegations

17  in *Barreiro*.  However, "mere familiarity with the defendant" is insufficient to show bias.  *Id.* at

18  1147.  Nor is the Court's knowledge of the allegations against Petitioner in *Barreiro* "an

19  extrajudicial source potentially prejudicing [the Court]" because it "occur[ed] in the course of

20  prior proceedings."  *Id.* at 1148.  Put simply, "opinions held by judges as a result of what they

21  learned in earlier proceedings" are "not subject to deprecatory characterization as 'bias' or

22  'prejudice.'"  *Liteky*, 510 U.S. at 551.

23         Accordingly, Petitioner fails to show judicial bias based on these allegations.

24              **b.  The record shows no judicial misconduct.**

25         Petitioner also alleges that the Court made improper comments as evidence of misconduct

26  and bias.  Specifically, Petitioner attributes the following comments to the Court: (1) "told the

27                                                  18

28  Case Nos. 19-CV-04534-LHK; 16-CR-00186-LHK-1
    ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C.
    § 2255

United States District Court
Northern District of California

1    prosecutor to 'find a way to charge' [Petitioner] in an unrelated criminal case, stating 3 times 'I

2    want him charged in that case.'"; (2) "I don't care if you are laying on the floor bleeding, NO! If

3    you don't show (at prison) you will be back in front of me, and you don't want that."; and (3)

4    "shook [its] finger at [Petitioner] and said again 'you better show up.'"  Mot at. 14.

5            However, Petitioner's allegations are contradicted by the record. *See generally* Plea Tr.;

6    Sentencing Tr.; August 30, 2017 Restitution Transcript, ECF No. 83 ("Restitution Tr.").  The

7    Court made no such comments. Petitioner's prior counsel through sentencing and restitution,

8    Michael Hinckley ("Hinckley") further confirms that Petitioner's declarations are unfounded.

9    Hinckley Decl. ¶ 9 (declaring that he "would recall if [he] heard either of these comments because

10   of their graphic and unusual nature" and confirming that the transcript of the August 30, 2017

11   restitution hearing "is consistent with [his] recollection of what was said.").

12           Petitioner's claim of judicial bias and misconduct is thus contradicted by the record and

13   unsupported by law.  Accordingly, the Court concludes this claim lacks merit.

14           **2.  Petitioner fails to allege an ineffective assistance of counsel claim.**

15           Petitioner next argues that Hinckley provided ineffective assistance of counsel. A

16   petitioner's claim of ineffective assistance of counsel is governed by the two part test set forth in

17   *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To prevail on such a claim, Petitioner must

18   show that: (1) counsel's representation fell below the range of competence demanded of attorneys

19   in criminal cases; and (2) that Petitioner was prejudiced by counsel's representation.  The

20   reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide

21   range of reasonable professional assistance." *Id.* at 689.  To demonstrate prejudice, Petitioner

22   must "show that there is a reasonable probability that but for counsel's unprofessional errors, the

23   result of the proceeding would have been different." *Id.* at 694.  The *Strickland* test also applies to

24   claims that a guilty plea was not knowing and voluntary.  *Hill v. Lockhart*, 474 U.S. 52, 58–59

25   (1985).  In that case, Petitioner must demonstrate that there is a reasonable probability that, but for

26   counsel's alleged errors and coercion, Petitioner would not have pleaded guilty and would have

27

28   Case Nos. 19-CV-04534-LHK; 16-CR-00186-LHK-1
     ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C.
     § 2255

United States District Court
Northern District of California

19

United States District Court
Northern District of California

insisted on going to trial.  *Id.*  Here, Petitioner alleges four separate grounds for relief. Petitioner alleges that Hinckley provided ineffective assistance because Hinckley underestimated Petitioner's likely sentence.  Mot. at 4.  Petitioner also asserts that Hinckley failed to seek recusal by the Court. *Id.* Petitioner further argues that Hinckley "failed to inform the sentencing court that Defendant was eligible for a downward variance for substantial assistance."  ECF No. 74 at 2. Lastly, Petitioner asserts that Hinckley failed to file an appeal in the case.  *Id.*  The Court addresses each ground below.

### a.  Petitioner fails to plead ineffective assistance due to Hinckley's alleged sentencing advice.

According to Petitioner's declaration, Hinckley advised Petitioner that "due to the restitution/loss amount of roughly $45,000, my age and first time offender status, that my likely sentence would be 6 to 8 months."  Mot. at 14.  However, as explained below, Petitioner's assertions fail to find support in the record or the law and fail at the first step of *Strickland*.

The record and Hinckley contradict Petitioner's assertions.  Petitioner's sentencing memorandum recommended 10 months' custody.  *See* ECF No. 23.  Hinckley further declares he never advised Petitioner that "it was likely that the Court would impose a sentence that was 2-4 months below what we were requesting" in the sentencing memorandum.  *See* ECF No. 93-1 ("Hinckley Decl.") ¶ 6.  Hinckley also declares that he advised Petitioner that "defendants often receive sentences within [the sentencing] guidelines," and never told Petitioner that it was likely the Court would grant the downward request.  *Id.*  Petitioner does not allege that he never saw or disagreed with Petitioner's sentencing memorandum seeking 10 months' custody.  It makes little sense that Hinckley would advise his client that Petitioner would likely receive a sentence that was *below* the Petitioner's requested sentence.  Because the sentencing memorandum and Hinckley contradict Petitioner's claims, the Court concludes the record does not support a finding of ineffective assistance.

More importantly, even accepting all of Petitioner's allegations as true, the Ninth Circuit has previously rejected substantially similar claims.  "[A]n attorney's inaccurate sentencing

20

prediction rarely falls outside the bounds of objectively reasonable representation." *United States v. Gaitin*, No. 99-17274, 2000 WL 793998, at *2 (9th Cir. June 20, 2000) (citing *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986); *United States v. Michlin*, 34 F.3d 896, 899 (9th Cir. 1994)). "Only in those egregious instances where there has been a 'gross mischaracterization of the likely outcome' do we recognize a narrow exception." *Gaitin*, 2000 WL 793998, at *2 (quoting *Iaea*, 800 F.2d at 865). The Court concludes that there was no "gross mischaracterization of the likely outcome" in the instant case under Ninth Circuit law. *Compare, e.g., United States v. Chacon-Palomares*, 208 F.3d 1157, 1159 (9th Cir. 2000) (underestimating a defendant's actual sentence by 102 months was a "gross mischaracterization" warranting an evidentiary hearing) *with Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990) (36 month difference between actual sentence and counsel's prediction did not support an ineffective assistance claim); *see also Gaitin*, 2000 WL 793998, at *2 (35 month difference between counsel's prediction and actual sentence length was not a "gross mischaracterization of the likely outcome.").

Lastly, even if Petitioner could show that Hinckley's advice was a "gross mischaracterization" and thus meets the requirements of *Strickland* at step one, Petitioner must still show prejudice under *Strickland* step two. Here, Petitioner fails to do so because Petitioner knew the Court retained authority to impose a higher sentence than recommended under the Plea Agreement. The Plea Agreement explained that "the Court is not bound by" the sentencing guidelines calculations and "may conclude that a higher [sentencing guidelines] range applies to [Petitioner]." Plea Agreement at 4. The Plea Agreement also explained "that regardless of the sentence that the Court imposes on [Petitioner], [he] will not be entitled . . . to withdraw [his] guilty plea." *Id.* At the plea hearing, the Court further confirmed that: (1) Petitioner understood the terms of the Plea Agreement; (2) Hinckley had answered Petitioner's questions regarding the Plea Agreement; and (3) Petitioner understood he was facing up to five years in prison by pleading guilty. Plea Tr. 6-8. Petitioner thus understood the Court retained the discretion to decide the length of the sentence, and that irrespective of Hinckley's promises, he was facing up to five years

21

United States District Court
Northern District of California

1    in prison by pleading guilty.  On these facts, Petitioner cannot show prejudice.  *See Doganiere*,

2    914 F.2d at 168 (no prejudice from attorney's prediction because prior to pleading guilty,

3    defendant understood the court retained discretion over the sentence length).

4        For all the reasons above, Petitioner fails to show ineffective assistance based on

5    Hinckley's alleged sentencing advice.

6        **b.  Petitioner fails to plead ineffective assistance based on failure to seek recusal
         or a downward variance for substantial assistance.**

7        Petitioner next alleges that Hinckley provided ineffective assistance because Hinckley

8    failed to move for the Court's recusal and did not inform the Court of Petitioner's assistance to the

9    FBI. Mot. at 4; ECF No. 74 at 2.  However, Petitioner fails to show Hinckley had legal basis to so

10   move and the record belies his claim.

11       First, as discussed above, there is no legal basis for recusal merely because the Court

12   presided over the ARTLoan case and was familiar with the factual allegations of Petitioner's

13   involvement in the ARTLoan business.  Nor does the record, or Hinckley, support Petitioner's

14   claims of bias.  *See generally* Sentencing Tr.; Plea Tr.; Restitution Tr.  Because there was no legal

15   basis to seek recusal on the facts of the case, the Court finds Defendant's claims fail to rebut the

16   presumption of reasonableness that attaches to Hinckley's strategic choice to not seek recusal by

17   the Court.  *See Strickland*, 466 U.S. at 689 (reviewing court must "indulge a strong presumption

18   that counsel's conduct falls within the wide range of reasonable professional assistance").

19       Second, the Plea Agreement contained no requirement that the government seek a

20   downward departure based on substantial assistance by the Petitioner.  "Section 5K1.1 permits a

21   district court to depart from the Guidelines '[u]pon motion of the government stating that the

22   defendant has provided substantial assistance in the investigation or prosecution of another person

23   who has committed an offense.'"  *United States v. Flores*, 559 F.3d 1016, 1019 (9th Cir. 2009)

24   (quoting U.S.S.G. § 5K1.1).  In the absence of such a requirement in the Plea Agreement, or the

25   government's motion, Hinckley had no legal basis to inform the Court that Petitioner was eligible

26   for a downward departure based on § 5K1.1.  *See, e.g.*, *United States v. Mena*, 925 F.2d 354, 355-

27                                                      22

28   Case Nos. 19-CV-04534-LHK; 16-CR-00186-LHK-1
     ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C.
     § 2255

United States District Court
Northern District of California

56 (9th Cir.1991) (holding that the district court was not required to sua sponte grant a downward departure when the government refused to bring a § 5K1.1 motion).

Furthermore, Petitioner's claim that Hinckley did not tell the Court about Petitioner's assistance to the FBI is contradicted by the record. Hinckley told the Court of Petitioner's assistance at least twice at sentencing. *See* Sentencing Tr. at 14 (Hinckley stating that Petitioner "cooperated with the government to try to prosecute ARTLoan extensively."); *id.* at 25 (Hinckley stating that Petitioner "did cooperate with the government, met multiple times, was a key witness for them as he was a liaison between them and several of the investors."). Petitioner makes no claims that Hinckley failed to negotiate with the government for a § 5K1.1 downward departure as part of the Plea Agreement. *See* ECF No. 73, 74.

Accordingly, the Court finds Petitioner has failed to plead an ineffective assistance claim on these allegations.

### c. Petitioner fails to plead ineffective assistance based on failure to file an appeal.

Lastly, Petitioner claims ineffective assistance of counsel because Hinckley "failed to file Notice of Appeal." Mot. at 4. Hinckley declares that he discussed with Petitioner the "options to challenge the sentence, including the possibility of habeas relief and a direct appeal" and told Petitioner that "a notice of appeal could be filed and that [Hinckley] would do it for him." *Id.* However, Hinckley declares that Petitioner never instructed Hinckley to file an appeal and Hinckley did not believe an appeal "was advisable or productive." Hinckley Decl. ¶ 10. Conversely, none of Petitioner's declarations state that Petitioner asked Hinckley to file an appeal or that Hinckley failed to provide relevant appeal or habeas advice to Petitioner. *See* Mot. at 14-15, 18. Although Petitioner's subsequent filing titled "Supplemental Information on § 2255 Petition" alleges that "despite Defendant's request, counsel did not file a notice of appeal," Petitioner never makes such a declaration under oath. *See, e.g.*, Mot. at 14-15, 18. Accordingly, the evidence in the record does not support Petitioner's claim that he requested Hinckley to file an appeal.

United States District Court
Northern District of California

23

Case Nos. 19-CV-04534-LHK; 16-CR-00186-LHK-1
ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C.
§ 2255

1    When a defendant has not requested that his counsel file an appeal, the United States

2    Supreme Court has concluded that "the question of deficient performance is easily answered:

3    Counsel performs in a professionally unreasonable manner only by failing to follow the

4    defendant's express instructions with respect to an appeal." *Roe v. Flores-Ortega*, 528 U.S. 470,

5    478 (2000).  In *Flores-Ortega*, the United States Supreme Court explained that "where the

6    defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken" the initial

7    relevant inquiry is "whether counsel in fact consulted with the defendant about an appeal." *Id.*

8    "Consult" means "advising the defendant about the advantages and disadvantages of taking an

9    appeal, and making a reasonable effort to discover the defendant's wishes." *Id.*

10    Here, Hinckley declares that after the sentencing hearing he explained to Petitioner "his

11    options to challenge the sentence," that "a notice of appeal could be filed" and Hinckley would do

12    it for Petitioner, if Petitioner "wished."  Hinckley Decl. ¶ 10; *see also* Mot. at 18 (noting in

13    Petitioner's affidavit that Hinckley suggested an appeal).  Hinckley also declares that he spoke to

14    Petitioner "several times before sentencing" about "these same facts and issues." *Id.*  However,

15    according to Hinckley, Petitioner "never directed [Hinckley] to file a notice of appeal or a habeas

16    petition." *Id.*  Petitioner's declarations do not allege that (1) Petitioner asked Hinckley to file an

17    appeal; or (2) Hinckley failed to inform Petitioner about appeal and habeas options.

18    Accordingly, the evidence in the record shows that Hinckley consulted with Petitioner

19    about Petitioner's options, did not fail to follow Petitioner's "express instructions with respect to

20    an appeal," and made reasonable efforts to discover Petitioner's wishes by raising the issue several

21    times. *Flores-Ortega*, 528 U.S. at 478.  As such, Petitioner fails to show that Hinckley acted "in a

22    professionally unreasonable manner." *Id.*

23    Accordingly, Petitioner's ineffective assistance claim lacks merit.

24    **3.  The Court properly considered aggravating circumstances when sentencing Petitioner.**

25    Petitioner next asserts that the Court "considered evidence from a previously discharged

26    criminal case, in which Movant was not charged, to increase sentence and violate sentencing

27

24

28    Case Nos. 19-CV-04534-LHK; 16-CR-00186-LHK-1
ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

United States District Court
Northern District of California

1    guidelines." Mot at 3.  Petitioner further contends that he "believes that his sentence significantly

2    exceeds the advisory range" and declares that Petitioner "saw a copy of the Statement of Reasons

3    and the reason given was "To teach Movant a lesson."" Mot. at 15.  Petitioner contends that

4    "[w]ithout more, [Petitioner] feels this is an improper reason for an upward variance of this

5    magnitude." *Id.*

6            "Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range

7    established by the applicable guideline, if the court finds that there exists an aggravating or

8    mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the

9    Sentencing Commission in formulating the guidelines . . . ."  *Witte v. United States*, 515 U.S. 389,

10   405-06 (1995) (citation and internal quotation marks omitted) (alteration in original).  In addition,

11   18 U.S.C. § 3661 provides that "[n]o limitation shall be placed on the information concerning the

12   background, character, and conduct of a person convicted of an offense which a court of the

13   United States may receive and consider for the purpose of imposing an appropriate sentence."

14   Thus, "[s]entencing courts have broad discretion to consider various kinds of information."

15   *United States v. Watts*, 519 U.S. 148, 151 (1997); *see also United States v. Christensen*, 732 F.3d

16   1094, 1102 (9th Cir. 2013) ("a sentencing judge may appropriately conduct an inquiry broad in

17   scope, largely unlimited either as to the kind of information he may consider, or the source from

18   which it may come.").

19           Here, the Court first determined whether two specific offense characteristics applied to

20   Petitioner's total offense calculation.  *See* Sentencing Tr. 17-23, 101-102.  The Court concluded

21   that under Ninth Circuit law considering the intended loss of over $1.5 million, rather than the

22   actual loss of only about $45,000 was warranted.  Thus, a 16 offense level increase applied to

23   Petitioner's offense level calculation.  *Id.* at 17-23.  The Court also determined that the sentencing

24   guidelines defined victims as those who suffered actual, rather than intended, loss from the

25   offense.  *Id.* at 27-43, 101-02.  As such, the sentencing guidelines effectively precluded the Court

26   from considering as victims the 20 creditors listed on Petitioner's bankruptcy petitions.  *Id.*

27

28
     Case Nos. 19-CV-04534-LHK; 16-CR-00186-LHK-1
     ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C.
     § 2255

United States District Court
Northern District of California

Accordingly, the Court did not apply a two level offense increase for offenses involving 10 or more victims. *Id.* at 101-02. The Court thus tabulated Petitioner's total offense level by adding the base offense level (6) with the loss amount increase (16) and the bankruptcy fraud increase (2), and subtracting for acceptance of responsibility (3). Reaching a total offense level of 21, the Court determined that the recommended sentencing guidelines provided a range of 37 to 46 months. *See* Sentencing Tr. at 101-02.

The Court then considered the relevant § 3553(a) factors and determined that the applicable guideline range understated the seriousness and harm from the offense because Petitioner's fraud benefited his sentencing guidelines calculations. *Id.* at 102-112. As discussed previously, Petitioner's bankruptcy petition was denied discharge because of his fraud. In turn, the creditors did not suffer actual loss, and thus the 2 point offense level increase under § 2B1.1(b)(2)(A), for crimes involving 10 or more victims, did not apply. *Id.* As such, Petitioner's fraud, and basis for the criminal conviction, precluded the application of this increase under the sentencing guidelines. *Id.* Petitioner's recommended sentencing guidelines range would have been 46 to 57 months had the two level increase for 10 or more victims applied. *See* PSR at 23; ECF No. 24 at 7.

Moreover, the Court explained that Petitioner orchestrated a fraud scheme to protect his money and defraud creditors and the Bankruptcy Court, beginning with setting up a bank account in his wife's name and without her knowledge or authorization 10 months prior to filing his bankruptcy petition, and culminating in multiple misrepresentations and omissions in Petitioner's deposition testimony and bankruptcy filings under penalty of perjury. *Id.* at 104-108. In these 10 months, Petitioner then put into that bank account:

- Equity in the Stockton street property in San Jose worth $243,762.

- Equity in a Minor avenue apartment in San Jose worth $54,129.

- Equity in his wife's life insurance policy worth $10,154.

- Equity in his own life insurance policy worth $7,354.

Case Nos. 19-CV-04534-LHK; 16-CR-00186-LHK-1
ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

1        • The balance of an investment account of $4,402.

2    *Id.* at 104.  Petitioner then transferred hundreds of thousands out of that account to himself prior to

3    filing for bankruptcy and failed to disclose these transfers.  *Id.*  at 105.  The Court also highlighted

4    that during the bankruptcy proceedings, Petitioner failed to disclose the following in multiple

5    Bankruptcy Court filings under penalty of perjury:

6        • Real property valued at $325,447.17.

7        • Transfers in three Chase checking accounts of $551,465.89

8        • Additional transfers that could result in a total number of transfers worth as high as

9            $1.5 million.

10       • Sale of a foreclosure property prior to filing for bankruptcy.

11   *Id.* at 105-111.  The Court explained this showed a repeated pattern of behavior of seeking to get

12   the benefit of the discharge of his debts while protecting and hiding his assets from creditors and

13   the Bankruptcy Court.  *Id.* at 111-12.

14       Accordingly, the Court concluded that the sentencing guidelines underrepresented the

15   actual harm of Petitioner's actions and varied Petitioner's sentence upward from the recommended

16   range by about 10 months to account for Petitioner's fraudulent scheme.  *Id.*  The sentence was

17   well below the statutory maximum and within the guidelines range had the creditor victims been

18   counted under the sentencing guidelines.  The Court also imposed a three year supervised release

19   condition on Petitioner.  *Id.* at 112.

20       Petitioner alleges that the relevant conduct the Court considered went beyond the

21   limitation on relevant conduct expressly agreed in the Plea Agreement.  ECF No. 74 at 4.

22   However, as explained above, the Court may vary Petitioner's sentence under § 3553(b) and has

23   "broad discretion to consider various kinds of information," *Watts*, 519 U.S. at 151.  Here, the

24   conduct Petitioner alleges was improperly considered, such as "liquidation of $31,801 from

25   various bank accounts," "opening a bank account in [Petitioner's] wife's name without her

26   permission," "allegedly lying about this in an adversary proceeding," and "failing to disclose a

27                                                         27

28

1    transfer of property," ECF No. 74 at 4, was all listed in the PSR.  *See, e.g.*, ECF No. 22 ¶¶ 10-17.

2    Petitioner never disputed these facts in the PSR.  *See, e.g.*, ECF No. 23.  Accordingly, the Court

3    properly relied on these statements when sentencing Petitioner.  *See Ameline*, 409 F.3d at 1085

4    ("[T]he district court may rely on undisputed statements in the PSR at sentencing.")

5           As to Petitioner's allegation that "the reason given" in the Statement of Reasons for

6    Petitioner's sentence "was 'To teach Movant a lesson,'" Mot. at 15, the record again contradicts

7    Petitioner's assertions.  *See* Statement of Reasons.  The Court never provided such a reason when

8    explaining why it varied Petitioner's sentence above the sentencing guidelines range.  *Id.*

9           Lastly, the Court finds the remainder of Petitioner's arguments on sentencing unpersuasive

10   because the Court did not increase Petitioner's offense levels under the Sentencing Guidelines §

11   3B1.1 or § 5K2.8.  ECF No. 74 at 5-6.

12          To sum up, the Court accurately calculated the sentencing guidelines range, considered the

13   relevant 3553(a) factors, and explained on the record the reasons for the upward variance.

14   Sentencing Tr. at 101-112.  Nothing more was required.  *See United States v. Mix*, 457 F.3d 906,

15   912 (9th Cir. 2006) ("Judges need not rehearse on the record all of the considerations that 18

16   U.S.C. § 3553(a) lists; it is enough to calculate the range accurately and explain why (if the

17   sentence lies outside it) this defendant deserves more or less").

18          Accordingly, Petitioner's sentencing claim lacks merit.

19          **4.   Restitution was correctly calculated.**

20          Petitioner also challenges restitution. Petitioner's challenge here is less than clear.

21   Petitioner asserts that the Court told Petitioner at the August 30, 2017 restitution hearing that "the

22   9th Circuit limits restitution in [Petitioner's] case to $45,586.77."  Mot at 14.  Petitioner also

23   alleges the Court conducted an "[i]mproper restitution calculation."  Mot. at 16.  In the

24   "Supplemental Information to § 2255 Petition" document, Petitioner further alleges that: (1) "the

25   plea agreement estimated on $45,586.77 in restitution"; (2) Petitioner "could not attend" the final

26   restitution hearing where "the restitution amount was increased by a staggering $166,421.23"; and

27
                                                        28

28   Case Nos. 19-CV-04534-LHK; 16-CR-00186-LHK-1
     ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C.
     § 2255

1    (3) Petitioner "did not have a meaningful opportunity to evaluate whether the legal bills were

2    correct, or reasonable, nor whether the legal fees were necessary to aid in the investigation and

3    prosecution of the offense."  ECF No. 74 at 4.

4         Petitioner is mistaken on the record and the law.  The record contradicts all of Petitioner's

5    assertions.  The Court never stated at the August 30, 2017 restitution hearing that restitution was

6    limited to $45,586.77.  *See* ECF No. 83.  Nor did the Plea Agreement estimate the restitution

7    amount to be $45,586.77.  *See* ECF No. 20.  In fact, the Plea Agreement noted that the maximum

8    restitution was "TBD".  *Id.*  Lastly, Petitioner was present at the final restitution hearing on

9    August 30, 2017 and answered several of the Court's questions.  *See, e.g.* August 30, 2017

10   Restitution Hearing Transcript, ECF No. 83 ("Restitution Tr.") at 47 ("The COURT: Which

11   facility has Mr. McVay been designated to? The DEFENDANT: Taft, California. Taft, your

12   Honor.").

13        Petitioner also had ample opportunity to contest the appropriate amount of restitution,

14   including the legal fees and costs.  *See* ECF Nos. 36, 37, 46 (Petitioner's briefings on restitution).

15   The Court conducted two restitution hearings with the government and Petitioner to determine the

16   accurate restitution amount, *see* Rest. Tr. at 42, and ultimately *rejected* the government's request

17   for a $1.75 million restitution award under applicable Ninth Circuit law, *id.* at 27-32.  The Court

18   ultimately awarded $37,540.50 in restitution to victims resulting from actual loss under 18 U.S.C.

19   § 3663A(b)(1), *see* ECF No. 52, in line with Petitioner's position, *see* ECF No. 46.

20        Moreover, the law requires the Court to award restitution to victims for their expenses "for

21   lost income and necessary child care, transportation, and other expenses incurred during

22   participation in the investigation or prosecution of the offense or attendance at proceedings related

23   to the offense." 18 U.S.C. § 3663A(b)(4).  Contrary to Petitioner's assertion, the record shows that

24   Petitioner had "a meaningful opportunity" to dispute these expenses.  *See* ECF No. 46 (Petitioner

25   disputing expenses and legal fees).  After carefully considering the requests and the arguments by

26   the government and Petitioner, the Court made factual findings and awarded $174,468 in legal

27

28

29

1    fees and expenses incurred pursuant to 18 U.S.C. § 3663A(b)(4).  Restitution Tr. at 32-46; *see also*

2    ECF No. 52.

3         Accordingly, Petitioner's claim arising from restitution lacks merit.

4    **C.      An Evidentiary Hearing is Not Warranted.**

5         Petitioner additionally requests an evidentiary hearing.  Mot. at 12.  A district court may

6    deny a Section 2255 motion without an evidentiary hearing if the movant's allegations, viewed

7    against the record, either do not state a claim for relief or are so palpably incredible or patently

8    frivolous to warrant summary dismissal.  *See United States v. Mejia–Mesa*, 153 F.3d 925, 931 (9th

9    Cir.1998) (district court properly denied evidentiary hearing on claims that failed to state a claim

10   for relief under Section 2255 as a matter of law); *Farrow v. United States*, 580 F.2d 1339, 1360-61

11   (9th Cir.1978) (evidentiary hearing unwarranted when Section 2255 petition relied on "conclusory

12   allegations, unsupported by facts and refuted by the record").  The Court may also deny the

13   hearing if the Court "can expand the record . . . and thereby answer any unanswered questions,

14   making it unnecessary for the court to conduct a hearing."  *Chacon-Palomares*, 208 F.3d at 1160.

15        Here, Petitioner has waived the right to bring all but his ineffective assistance and

16   restitution claims.  Petitioner fails to present any cognizable ineffective assistance claim for relief

17   or a claim for relief arising from the Court's restitution decision.  Accordingly, the Court DENIES

18   Petitioner's request for an evidentiary hearing.

19   **D.      The Interests of Justice Do Not Require Appointment of Counsel.**

20        Petitioner also moves for an appointment of counsel.  ECF No. 97.  18 U.S.C. §

21   3006A(a)(2)(B) authorizes a district court to appoint counsel to represent a habeas petitioner

22   whenever "the court determines that the interests of justice so require," and the petitioner is

23   financially unable to obtain representation.  Appointment is mandatory whenever an evidentiary

24   hearing is required in a habeas action.  *See United States v. Duarte–Higareda*, 68 F.3d 369, 370

25   (9th Cir.1995) (citing Rule 8(c) of the Rules Governing Section 2255 Proceedings, 28 U.S.C. foll.

26   § 2255).

27

28

United States District Court
Northern District of California

30

Case Nos. 19-CV-04534-LHK; 16-CR-00186-LHK-1
ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C.
§ 2255

United States District Court
Northern District of California

1    As explained above, an evidentiary hearing is unwarranted in this case.  Moreover, nearly

2    all of Petitioners claims are waived and his ineffective assistance claim lacks merit.  Accordingly,

3    the interests of justice do not require appointment of counsel, and Petitioner's motion for

4    appointment of counsel is DENIED.

5    **IV.    CONCLUSION**

6    For the foregoing reasons, the Court DENIES Petitioner's motion to vacate, set aside, or

7    correct sentence with prejudice.  The Court also DENIES Petitioner's request for an evidentiary

8    hearing and motion for appointment of counsel.[5]  No certificate of appealability shall issue, as

9    Petitioner has not made a substantial showing of the denial of a constitutional right, as required by

10   28 U.S.C. § 2253(c)(2).

11   **IT IS SO ORDERED.**

12   Dated: January 14, 2022

*Lucy H. Koh*
_____
LUCY H. KOH
United States Circuit Judge[6]

13
14
15
16
17
18
19
20
21
22
23
24

25   _____
26   [5] The Court also denies Petitioner's motion for discovery for audio recordings of Petitioner's
     sentencing hearings, ECF No. 96, and Petitioner's Request for 30-Day Extension of Time, ECF
     No. 95, as moot.
27   [6] Sitting by designation on the United States District Court for the Northern District of California.

31

28   Case Nos. 19-CV-04534-LHK; 16-CR-00186-LHK-1
     ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C.
     § 2255